UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHARON E. CAMPBELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:12CV00289AGF |
| | ) |
| CREDIT PROTECTION | ) |
| ASSOCIATION, L.P., | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

Plaintiff Sharon Campbell brings this action pursuant to the Fair Debt Collection Practices Act ("FDCPA"), alleging violations of the FDCPA[1] related to efforts by Defendant Credit Protection Association, L.P., ("CPA") to collect a debt owed to Charter Communications. Plaintiff's complaint includes allegations that Defendant violated §§ 1692e (9) and (11) of the FDCPA by failing to properly disclose its identity as a debt collector and by threatening to make unauthorized credit reports.

Now before the Court are the parties' cross motions for summary judgment with respect to the claims arising under 15 U.S.C. § 1692e (9) and (11). For the reasons set forth below, Plaintiff's motion will be denied and Defendant's motion will be granted.

---

[1] Plaintiff alleges that "Defendant failed to identify itself as a debt collector"; Defendant's name, "Credit Protection Association" was confusing and intended to lead Plaintiff to believe it was not a debt collector; "Defendant threatened to take action, specifically credit reporting, that it could not legally take and that it did not intend to take"; "Defendant communicated a false impression of the character, amount and legal status of the debt"; Defendant engaged in harassing conduct; Defendant failed to send a validation notice or provide Plaintiff an opportunity to dispute the debt. Doc. No. 4 ¶¶ 22(a)-(g).

**Procedural History**

After Plaintiff filed her motion for summary judgment and supporting memorandum, (Doc. Nos. 10 and 11), Defendant moved for leave to file a cross motion for summary judgment, and the Court granted the motion and set a briefing schedule to address the briefing related to the cross motions. In accordance with that schedule, Defendant filed its response to Plaintiff's motion for summary judgment, together with its own cross motion for summary judgment. (Doc. No. 15.) Although the briefing schedule set a deadline for Plaintiff to file a reply brief and response to Defendant's motion for summary judgment, Plaintiff did not file any reply or response to Defendant's cross motion, and the time to do so has expired.

Plaintiff later filed a motion to stay the summary judgment proceedings for newly discovered evidence. Plaintiff asserted that she had not requested summary judgment on all of her claims, including her claim in paragraph 22(c) of her Complaint, in which she asserted that Defendant threatened Plaintiff with collection activity, specifically, credit reporting of Plaintiff's debt, that Defendant was not legally authorized to take. Plaintiff requested leave to file a copy of the agreement Defendant had with Charter Cablevision, together with a transcript of certain deposition testimony by a representative of Defendant, both of which were from a separate FDCPA lawsuit pending in this judicial district brought by a different plaintiff against this same defendant, *Young v. Credit Protection Association, L.P.*, No. 4:12-cv-00981 HEA (the "*Young* Suit"). Plaintiff asserted that the agreement and the deposition testimony support her allegation that

Defendant violated 15 U.S.C. § 1692e (9) by misrepresenting its authority to report the debt to the credit reporting services. The Court permitted the exhibits to be filed, over Defendant's objection, and the parties were permitted to file supplemental briefing on the narrow issue related to the supplemental filing. (Doc. Nos. 29 and 32.)

**THE FACTS**

The pleadings, depositions, and affidavits on file demonstrate the following relevant facts, except as otherwise noted:

Plaintiff, a natural person, resides in St. Louis, Missouri. Defendant is a Texas limited partnership engaged in the collection of consumer debt using the mail and telephone.

On or about September 21, 2010, Defendant initiated collection efforts with respect to a debt Plaintiff allegedly owed to Charter Communications for residential cable television service (the "Charter Debt"). On approximately November 22, 2010, Defendant furnished information to national credit bureaus regarding Plaintiff's Charter Debt. On or about June 23, 2011, Defendant, in furtherance of its collection efforts, sent a letter ("the Letter") to Plaintiff concerning the Charter Debt. Despite Defendant's documentation that it sent Plaintiff three earlier letters, Plaintiff asserts in her affidavit that the Letter was the first communication she received from Defendant. The text of the Letter is attached hereto as Exhibit 1.

3

On or about July 7, 2011, Plaintiff paid the Charter debt in full, and on the same day Defendant notified the credit bureaus that Plaintiff had paid the outstanding balance on the Charter Debt.

In the affidavit submitted in support of her motion for summary judgment, Plaintiff states that upon receipt of the Letter she did not understand that Defendant was a debt collector and thought that Defendant was either a credit bureau or a credit protection and monitoring company. Plaintiff asserts that until legal counsel magnified it and pointed it out to her, she did not see or did not read the statement in smaller font at the bottom of the Letter indicating that it was an attempt to collect a debt. Plaintiff asserts that even if she had read that statement, she would not have known the Letter was from a debt collector because it did not contain the phrase, "this is a communication from a debt collector." Plaintiff further states that on reading the Letter she was uncertain about the amount of the debt. In addition, she states that she was confused by the statement in the Letter, "[t]his negative information can remain in your records for up to seven (7) years and may affect your ability to obtain credit," because she was uncertain when, or if, the seven year period had begun. Plaintiff further contends that Defendant's name, "Credit Protection Association," coupled with what she characterizes as "an offer to help with her credit" confused her.

In her supplemental brief, Plaintiff asserts that the Letter created the impression that Charter had authorized Defendant to file a credit report with respect to her debt, but that there was no such authorization. In the deposition from the *Young* Suit, Defendant's

representative testified that Defendant's compliance manual, the sole document related to its policy on credit reporting, provides that "[o]ur client determines when the account will be forwarded to Credit Bureaus." (Doc. No. 29-1.) Defendant's representative also testified that the compliance manual accurately reflects Defendant's policy on credit reporting and that Defendant does not file credit reports against consumers unless it has authorization from Charter. The debt collection agreement between Defendant and Charter ("the Agreement") authorizes Defendant to "pursue collection of the debt to the fullest extent possible," but the Agreement makes no explicit reference authorizing Defendant to file credit reports regarding debts owed to Charter. *See* Agreement (Doc. No. 30-1.) Defendant's representative further testified that he had no knowledge of where the authorization for CPA to file credit reports regarding consumer debts would be found.

## ARGUMENTS OF THE PARTIES

Plaintiff contends that she is entitled to summary judgment on her claim under § 1692e (9) because Defendant falsely represented or implied that it was an "association" set up to aid consumers or monitor credit scores. Specifically, Plaintiff asserts that she did not know that she was dealing with a collection agency due to the deceptive and confusing nature of Defendant's name, "Credit Protection Association," and its offer to "help Plaintiff clean up her credit." Plaintiff asserts that these factors would mislead and confuse an unsophisticated consumer.

Plaintiff also asserts that Defendant violated § 1692e (9) because the Letter created the false impression that Charter had authorized it to report the debt. Plaintiff asserts that the absence of any reference to credit reporting in Defendants' contract with Charter coupled with Defendant's testimony concerning that document at least creates a genuine issue of material fact as to whether Charter authorized Defendant to engage in credit reporting. Plaintiff alleges that Defendants' misleading statements in the Letter caused her considerable stress and anxiety. Plaintiff was concerned about how much Defendant seemed to know about her credit situation and, given the fact that Plaintiff could not figure out what kind of company she was dealing with, she did not know how to respond to the Letter.

Plaintiff next contends that Defendant violated 1692e (11) because it failed to include in the Letter the standard disclaimer, "this communication is from a debt collector." Although the Letter included the sentence, "[t]his is an attempt to collect a debt and any information obtained will be used for that purpose," Plaintiff characterizes the font as "tiny and unreadable" and notes that this disclosure does not meet the requirements of section 1692e (11) because it fails to disclose that the communication is from a debt collector. She further asserts that Defendant could have easily avoided an FDCPA violation by including the standard disclaimer that "this communication is from a debt collector."

Defendant argues that it is entitled to summary judgment because other courts have held on the basis of similar allegations that its name, Credit Protection Association,

6

is not misleading. In addition, Defendant points out that in the Letter it used the boilerplate language regarding debt collection required by FDCPA in initial communications with a debtor, despite the fact that this was not its first communication with Plaintiff.

With respect to the issue of credit reporting, Defendant asserts that the FDCPA prohibits reporting only if such reporting has been prohibited by the creditor and the debt collector makes it appear that such reporting had been authorized. Defendant further contends that Plaintiff has offered no evidence that Charter prohibited it from filing credit reports, and therefore, that they cannot have violated the FDCPA on this basis. In addition, Defendant argues that credit reporting should be deemed authorized under the Agreement because it authorizes Defendant to "pursue collection of the debt to the fullest extent possible." (Doc. No. 30-1.)

## APPLICABLE LAW

### Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine dispute as to any material fact exists and the movant is entitled to judgment as a matter of law." *Fu v. Owens*, 622 F.3d 880, 882 (8th Cir. 2010). The burden of demonstrating the absence of any genuine issue of material fact rests on the movant. *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008). Nevertheless, a nonmovant may not rest

upon mere denials or allegations, but must instead designate the specific facts sufficient to raise a genuine issue for trial. *See Crossley v. Georgia–Pacific Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Self-serving, conclusory statements, without more, are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993). Moreover, the requirement, on a motion for summary judgment, that facts must be viewed in the light most favorable to the nonmoving party applies only if there is a genuine dispute as to those facts. *Gibson v. American Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012) (internal quotation marks and citation omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)). Finally, in ruling on a motion for summary judgment, a court may not invade the province of the jury. "Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.*

### **Violation of the FDCPA**

Congress created the FDCPA in order to stop the "use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692. Section 1692e (9) proscribes "[t]he use . . . of any written communication . . . which creates a false impression as to its source, authorization, or approval." 15 U.S.C. § 1692e (9). Section 1692e (11) prohibits "[t]he failure to disclose in the *initial written*

communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector. . . ." 15 U.S.C. § 1692e (11) (emphasis added).

To prevail on her claims for violation of the FDCPA, Plaintiff must prove that she is a consumer; Defendant is a debt collector; there was an attempt to collect a debt; and Defendant violated, by act or omission, a provision of the FDCPA. *See Pace v. Portfolio Recovery Assocs., LLC,* 872 F. Supp. 2d 861, 864 (W.D. Mo. 2012). The Act defines a consumer as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a (3). "Debt" is defined as "any obligation . . . of a consumer to pay money arising out of a transaction [that was] . . . primarily for personal, family, or household purposes." 15 U.S.C. §1692a (5). The FDCPA is a strict liability statute, and a consumer need not show intentional conduct by the debt collector to establish a violation. *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 219 (N.D.N.Y. 2010).

Under the FDCPA, courts must assess the deceptive, misleading or confusing nature of collection activity from the perspective of an "unsophisticated consumer." *See Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317-18 (8th Cir. 2004); *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir. 2001); *Rollins v. Portfolio Recovery Assocs., LLC*, No. 11-00665-CV-W-GAF, 2012 WL 6051999, at *3 (W.D. Mo. Apr. 25, 2012); *McCafferty v. Schwartzkopf Law Office*, No. 4:10 CV 1401 RWS, 2011 WL 4916382, at *2 (E.D. Mo. Oct. 17, 2011). The "unsophisticated

9

consumer" standard not only "protects the uninformed or naive consumer," but also includes "an objective element of reasonableness," to ensure that debt collectors are not held liable as a result of "peculiar interpretations of collection [attempts]." *Strand*, 380 F.3d at 317-18 (internal quotes and citations omitted); *see also White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000) (noting that "[a]ny document can be misread . . . [and] [t]he Act is not violated by a dunning letter that is susceptible of an ingenious misreading, for then every dunning letter would violate it. The Act protects the unsophisticated debtor, but not the irrational one"). Although the standard is designed to protect the "uninformed or naïve consumer" of "below average sophistication or intelligence," it is not "tied to the very last rung on the sophistication ladder." *Strand*, 380 F.3d at 317 (internal quotations and citations omitted). In addition, it is proper to assume that an "unsophisticated consumer" would be confused or misled only if a "significant fraction" of people would be similarly misled. *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 949 (7th Cir. 2004).

In this context, "unrealistic, peculiar, bizarre, and idiosyncratic interpretations of collection letters" are rejected. *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) *distinguished on other grounds, Janick v. Calvary Portfolio Serv., LLC*, No. 06-3104 (MJD/AJB), 2007 WL 1994026, at *7 (D. Minn. Jul. 3, 2007) . "[A] mere claim of confusion is not enough: a plaintiff must show that the challenged language . . . unacceptably increases the level of confusion." *Id.* (emphasis and internal quotation omitted). "[A]necdotal proclamations" of confusion "will not suffice" to show that a

collection letter is confusing as a matter of law. *Id.*; *see also Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574-75 (7th Cir. 2004). And "mere speculation that a collection letter confuses the unsophisticated debtor is not enough for an FDCPA plaintiff to survive the debt collector's motion for summary judgment." *See Durkin*, 406 F. 3d at 415. "Thus, when the letter itself does not plainly reveal that it would be confusing to a significant fraction of the population, the plaintiff must come forward with evidence beyond the letter and beyond his own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial." *Id.* Such additional or "extrinsic evidence" may be satisfied through evidence such as consumer surveys or expert testimony. *Id.*; *see also Taylor*, 365 F.3d at 575; *Chuway*, 362 F.3d at 948; *Pettit v. Retrieval Masters Cred. Bureau, Inc.*, 211 F.3d 1057, 1062 (7th Cir. 2000).

A debt collector who violates the FDCPA is liable for any actual damages sustained by the plaintiff in addition to statutory damages of up to $1,000 and attorney's fees. 15 U.S.C. § 1692k (a). Actual damages include damages for mental anguish, emotional distress, and humiliation. *Jenkins v. E. Asset Mgmt., LLC*, 4:08-CV-1032 CAS, 2009 WL 2488029, at *3 (E.D. Mo. Aug. 12, 2009).

## **DISCUSSION**

The record before the Court establishes the first three elements of the disputed claims. Plaintiff is a "consumer," a natural person allegedly obligated to pay a debt for residential cable television service. *See* 15 U.S.C. § 1692a (3) & (5). In addition, it is undisputed that Defendant is a "debt collector," defined as one "who regularly collects or

attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* at § 1692a (6). And the Letter, an attempt to collect an alleged debt for residential cable television services, is a "communication" within the meaning of the FDCPA. *Id.* at § 1692a (2). Plaintiff's claims fail, however, with respect to the fourth element of her claims under §§ 1692e (9) and (11). First, with respect to § 1692e (9), Plaintiff asserts that she was confused by the use of the name Credit Protection Association. Plaintiff's reliance on *Wright v. Credit Bureau of Georgia, Inc.*, 548 F.Supp. 591, 598-99 (N.D. Ga. 1982) ("*Wright I*"), in support of that position is misplaced. In *Wright I*, the court found a violation of the FDCPA where the debt collector misrepresented that it was a credit bureau and, like Defendant in the instant case, disclosed in smaller typeface that the letter was an attempt to collect a debt. Based on the "prominent use of the term 'credit bureau' in its letterhead, [and] the less noticeable identification of the collection division as the source of the collection letters," the court concluded that the debt collector had violated section 1692e. *Id.* at 598. The Court finds *Wright* is distinguishable as Defendant's name is not as suggestive as the term Credit Bureau.

In any event, the decision in *Wright I* is not binding upon this Court, and a later appellate court reached a contrary result. *See Dunlap v. Credit Protection Ass'n, LP*, 419 F.3d 1011, 1012 (9th Cir. 2005) (holding that the name Credit Protection Association was not misleading or deceptive under the FDCPA). Moreover, in *Wright v. Credit Bureau of Georgia, Inc.*, 555 F. Supp. 1005, 1007 (N.D. Ga. 1983) ("*Wright II*"), the Georgia

district court reconsidered its ruling in *Wright I* and also reached a contrary result. *Id.* (holding, on a motion for reconsideration, that despite the use of the name Credit Bureau of Georgia, the dunning letters state only "the well-known fact, recognized by all consumers, regardless of the degree of their sophistication, that a failure to pay one's bills will affect his ability to obtain credit in the future. . . [and] does not violate the FDCPA").

Compliance with § 1692e (11) also requires that the debt collector be "clearly" identified in the communication to the debtor. *See Epps v. Etan Indus., Inc. d/b/a Credit Prot. Ass'n*, No. 97C8770, 1998 WL 851488, at *9 (N.D. Ill. Dec. 1, 1998). Here, Plaintiff asserts that the name, "Credit Protection Association," does not clearly identify Defendant as a debt collector. This assertion also fails as contrary to established law.

As noted, in *Dunlap v. Credit Protection Association, LP*, the appellate court held that the name Credit Protection Association was not misleading or deceptive under the FDCPA. *Id.*, 419 F.3d at 1012 (holding with respect to "§ 1692e, generally," that "[a]ny inference regarding credit reporting that can be drawn from [Credit Protection Association's] name is, at best, very weak" ); *see also Epps*, 1998 WL 851488, at *6 n.8 (concluding that "the name Credit Protection Agency, when used in conjunction with the disclaimer that it is seeking to collect a debt and that information obtained will be used for that purpose, and when used in a letter that could not lead an unsophisticated consumer to believe that it was offering assistance, does not violate the FDCPA").

Although Plaintiff cites several other bases for FDCPA violations arising from the allegedly confusing nature of the Letter, the Court finds these allegations unsupported by

13

sufficient evidence to either support the entry of summary judgment in her favor or to avoid Defendant's motion for summary judgment. First, no straightforward or rational interpretation of the Letter indicates that Defendant offered to "help" Plaintiff apart from urging her to pay off the debt. "The letter contains no offer 'to help the debtor,' but instead directs the debtor to help [herself] by [promptly paying the past due balance]." *Epps*, 1998 WL 851488, at *9.

In addition, apart from her own statements that she was confused by the Letter, Plaintiff has offered no "extrinsic" evidence to support her claims. The anecdotal evidence from Plaintiff's affidavit is, without more, insufficient to allow "an FDCPA Plaintiff to survive the debt collector's motion for summary judgment." *Durkin*, 406 F.3d at 415. Here Plaintiff offers no survey, expert testimony or other evidence to support her own anecdotal evidence. *Id.*; *see also Taylor*, 365 F.3d at 575 (survey); *Pettit*, 211 F.3d at 1062 (expert testimony).

Similarly, Plaintiff's assertion that she was confused by the statement, "[t]his negative information can remain in your records for up to seven (7) years and may affect your ability to obtain credit," and her contention that the Letter failed to indicate the amount of the debt are without merit. The Letter clearly quantifies the amount of the debt as $120.57 in two separate places, including at the top, as "Amount Due." Further, Plaintiff does not offer and the Court has not found authority to support her assertion that Defendant has a duty under the statute to explicitly state the date of the credit report. In

the absence of such an obligation, the Defendant is entitled to judgment as a matter of law on these allegations.

Plaintiff's claim in her supplemental filing, that Defendant lacked authority to report the Charter Debt to the credit bureaus, in violation of § 1692e (9), also fails. As Defendant correctly notes, the FDCPA proscribes credit reporting by the debt collector only if such reporting has been prohibited by the creditor and the debt collector makes it appear that such reporting has in fact been authorized by the creditor. 15 U.S.C. § 1692e(9) (prohibiting [t]he use or distribution of a written communication which . . . creates a false impression as to its authorization"). The Letter does not assert or in any way mention that Charter authorized the referenced credit report. Therefore, no rational reading of the Letter could lead a debtor to conclude that Defendant was representing that it had such authorization. In addition, Plaintiff offers no evidence that Charter prohibited Defendant from filing a credit report as part of Defendant's debt collection activities on Charter's behalf. To the contrary, the Agreement authorized Defendant to pursue collection efforts to the fullest extent. Therefore, the record is devoid of evidence to support a FDCPA violation predicated upon the credit report. *Cf. Pace,* 872 F.Supp.2d at 867 (noting that "failure to pay a legitimate debt owed generally will result in a negative impact on one's credit report"); *Cruz v. MRC Receivables Corp.*, 563 F. Supp. 2d 1092, 1099-1102 (N.D. Cal. 2008) (holding that including the notice of a possible negative report to credit-reporting agencies in a dunning communication does not violate the

15

FDCPA); 15 U.S.C. § 1681S–2(a)(7)(A)(i) (providing for notification of the debtor when negative information is submitted to a credit-reporting agency).

On this record it is clear that Plaintiff has presented no material issues of fact that preclude judgment as a matter of law on these claims, and that Defendant is entitled to judgment. An allegedly false or misleading representation is not actionable under the FDCPA unless it is material. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010). The materiality requirement is "not concerned with mere technical falsehoods . . . but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." *Id.* at 1034. Although materiality is a fact-specific issue ordinarily left to the trier of fact, *In re Apple Computer Secs. Litig.*, 886 F.2d 1109, 1113 (9th Cir. 1989), "a mere claim of confusion is not enough: a plaintiff must show that the challenged language . . . unacceptably increases the level of confusion." *Durkin*, 406 F.3d at 414 (emphasis and internal quotation omitted). In addition, as noted above, "mere speculation that a collection letter confuses the unsophisticated debtor is not enough for an FDCPA plaintiff to survive the debt collector's motion for summary judgment." *Id.* at 415. "Thus, when the letter itself does not plainly reveal that it would be confusing to a significant fraction of the population, the plaintiff must come forward with evidence beyond the letter and beyond [her] own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial." *Id.*

Plaintiff has presented nothing beyond her own self-serving allegations of confusion to support her claims. In the absence of any additional evidence, the Court concludes that Plaintiff's motion for summary judgment must be denied, and Defendant's motion for summary judgment with respect to the § 1692e (9) claims should be granted. *See Briscoe v. County of St. Louis, Missouri*, 690 F.3d 1004, 1011 (8th Cir. 2012) (noting that "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'") (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

Plaintiff's contention under 1692e (11) that the Letter was required to include the statement "[t]his is a communication from a debt collector" is also contrary to Eighth Circuit law. In *Volden v. Innovative Fin. Sys. Inc.*, 440 F.3d 947, 955 (8th Cir. 2006), the Eighth Circuit affirmed summary judgment for the defendant on the plaintiff's claim that the debt collector violated the FDCPA because it did not provide the debtor with the precise statement that "the communication is from a debt collector" contained in 15 U.S.C. § 1692e (11). The Eighth Circuit held "[t]hough the letter does not say it is from a debt collector, the fact it says it is sent in an attempt to collect a debt is sufficient for even the unsophisticated consumer to understand that such a letter is necessarily from a 'debt collector.'" *Id*. Construing almost identical language, the Court found the language used, "effectively conveys" the message required by the FDCPA. *Id.*; *see also Pettit*, 211 F.3d at 1061 (holding, as a matter of law, that the statement "in plain English that '[t]his

17

is an attempt to collect a debt,'" and a "careful reading of the letter" would indicate to an unsophisticated consumer that communication was from a debt collector, not a credit bureau or other agency); *Epps,* 1998 WL 851488, at *9 (deciding the same issue in favor of the defendant before this Court, Credit Protection Association). Based on the above cases, the Court concludes that Defendant's use of the statement, "[t]his is an attempt to collect a debt and any information obtained will be used for that purpose," meets the requirements of § 1692e (11). *Volden,* 440 F.3d at 955.

## CONCLUSION

On the basis of the foregoing, the Court finds that Defendant has established that there are no material facts in dispute or that Plaintiff has offered no evidence to support her claims under 15 U.S.C. § 1692e (9) & (11), and that Defendant is entitled to judgment on these claims.

It appears that neither party has asserted that it is entitled to judgment as a matter of law with respect to Plaintiff's remaining claims under 15 U.S.C. §§ 1692d, 1692f (1), and 1692g. And to the extent Plaintiff asserts that the Letter was Defendant's first communication and that Defendant violated § 1692g by not advising Plaintiff of her right to dispute the debt, an issue of fact is presented with regard to whether the letter was the first communication.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment is **DENIED**. (Doc. No. 10.)

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment is **GRANTED**. (Doc. No. 16.)

**IT IS FURTHER ORDERED** that the remaining claims shall be scheduled for trial on **Tuesday, May 28, 2013** at **9:00 a.m.**

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of March, 2013.

**EXHIBIT 1**

**Important Notice**

Account With    Charter Communications
Amount Due    $120.57
Reference #    01604672513



PO Box 802068
Dallas, TX 75380-2068

Dear SHARON CAMPBELL:

Your outstanding balance of $120.57 with Charter Communications has been reported to the national credit reporting agencies as an Unpaid Collection Account. This negative information can remain in your records for up to seven (7) years and may affect your ability to obtain credit.

Perhaps your financial situation has changed allowing you to settle this debt at this time. Lower your risk of being denied credit – make your payment in full today. Once payment is received and settlement made by your financial institution, the national credit reporting agencies will be notified, and your account's status will be changed to a "Paid Collection Account".

To take advantage of this opportunity, make your payment today. Credit Protection Association accepts Visa®, MasterCard® and check payments by phone or web. Call toll free at (800) 418-8144 or visit our website at www.paycpa.com. Cash payments can be made at any MoneyGram® agent location nationwide. Credit Protection Association's 4 digit MoneyGram® receive code is 5040. Please have your 11 digit reference number 01604672513 available when making payment.

Mail Payment or Correspondence to:    Credit Protection Assoc. L.P.
P.O. Box 802068
Dallas, TX 75380-2068

This is an attempt to collect a debt and any information obtained will be used for that purpose.
©2007-2010 Credit Protection Assoc., L.P. All rights reserved

---

Have you ever used a check cashing store?
Yes ___ No ___

If yes, which one?
___

If no, would you consider it?
Yes ___ No ___

Would you like more information about stores in your area?
Yes ___ No ___

Charter Communications
P.O. Box 802068
Dallas, TX 75380-2068

PLACE STAMP HERE